# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIKE DENTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-CV-280-GKF-FHM |
| ) | |
| SCOTT CHAMBLESS, individually and ) | |
| in his official capacity; ) | |
| KEVIN LANHAM, individually and ) | |
| in his official capacity; ) | |
| CHRIS LEAMON, individually and ) | |
| in his official capacity; and ) | |
| THE CITY OF OWASSO, OKLAHOMA, ) | |
| a municipal corporation, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter comes before the court on the Motion to Dismiss [Doc. #10] of defendants Kevin Lanham and Chris Leamon. For the reasons discussed herein, the motion is granted.

### I. Background

Plaintiff Mike Denton was employed by the City of Owasso Police Department as a police officer. On June 14, 2015, while on duty, Denton participated in the pursuit, and eventual arrest, of Cody Mathews, who was driving a stolen vehicle. The pursuit ended in Nowata County, where Mathews was arrested.

On October 2, 2015, the Nowata County District Attorney's Office charged Denton with one count of assault and battery with a deadly weapon and one count of reckless conduct with a

firearm related to Denton's conduct during the June 14 arrest of Mathews. On March 8, 2016, Denton was acquitted of both charges.[1]

On May 18, 2017, Denton initiated this lawsuit against Scott Chambless, the Police Chief of the Owasso Police Department; the City of Owasso; Chris Leamon, an agent of the Oklahoma State Bureau of Investigation ("OSBI"); and Kevin Lanham, an OSBI agent. [Doc. #1].

Denton alleges that Leamon and Lanham conducted the OSBI's investigation of Denton's conduct during the arrest of Mathews, which included interviewing several witnesses. [Doc. #1, p. 11 ¶ 70].

First, with respect to Leamon, Denton alleges that, during Leamon's interview with Nowata County Police Officer Cheyenne Lee, officer Lee stated as follows:

- "I told him [him being Denton], after the video, good job with the shotgun, cause when he was poking him [Mathews], he wasn't reaching for the knife."
- "I told him. [sic] [him being Denton] I said that I was worried that he [Mathews] was going to pick up that knife and we were going to have to kill him in the truck."
- That he feared that one of the police officers at the scene would "reach in and get stuck." (That is, stuck with Mathews' knife).

[Doc. #1, p. 11 ¶ 72]. However, Denton alleges that these statements were not included in a written report entitled "Interview of Cheyenne Lee," which became "part of the larger report that was submitted to the Nowata County District Attorney's Office" before charges were filed against Denton. [*Id.*, p. 12 ¶ 73]. Denton alleges that Leamon's report omitted these statements to intentionally give the false impression that Denton's conduct was criminal. [*Id.*, p. 12 ¶ 75].

---

[1] The court takes judicial notice of matters that are public record in the Nowata County criminal felony no. CF-2015-00126, the state court criminal proceeding against Denton. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

Second, with respect to Lanham, Denton alleges that Lanham interviewed CLEET instructor Shannon Butler, but did not inform Butler that Mathews was armed with a knife and had been driving into oncoming lanes of highway traffic at speeds exceeding ninety miles per hour. Denton asserts that Lanham "withheld the totality of circumstances" from Butler in order to secure from him an unfavorable opinion of Denton. [*Id.*, p. 12 ¶¶ 76-77]. Denton also alleges that Lanham signed the Probable Cause Affidavit filed by the State of Oklahoma in the criminal case against Denton. [*Id.*, p. 12 ¶ 79].

Based on these allegations, Denton asserts a section 1983 malicious prosecution claim against the OSBI agents for violation of his Fourth and Fourteenth Amendment rights. [*Id.*, p. 13]. Leamon and Lanham have moved to dismiss Denton's claim against them pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Legal Standard

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief can be granted. A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to make out the claim. *Id.* at 556. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotations omitted). The court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).

**III. Discussion**

Pursuant to 42 U.S.C. § 1983, the federal statute that authorizes a civil action for deprivation of civil rights, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." Section 1983 "'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred.'" *Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). "Accordingly, '[t]he first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right secured by the Constitution and laws.'" *Id.* (quoting *Baker,* 443 U.S. at 140).

**A. Fourteenth Amendment**

Denton alleges that Leamon and Lanham are liable under 42 U.S.C. § 1983 for violating his Fourteenth Amendment right to be free from malicious prosecution. [Doc. #1, p. 2 ¶ 6]. Leamon and Lanham seek dismissal of Denton's Fourteenth Amendment claim because Denton has an adequate remedy under Oklahoma state law. [Doc. #10, p. 5].

The Tenth Circuit's decision in *Myers v. Koopman*, 738 F.3d 1190 (10th Cir. 2013), is instructive. In that case, the court concluded that the U.S. District Court for the District of Colorado properly dismissed a Fourteenth Amendment malicious prosecution claim under 42 U.S.C. § 1983, concluding that "[i]f a state actor's harmful conduct is unauthorized and thus could not be anticipated pre-deprivation, then an adequate post-deprivation remedy—such as a state tort claim—will satisfy due process requirements." *Id.* at 1193. Relative to allegations that an officer fabricated facts included in a probable cause affidavit, the court reasoned that "[s]uch lawlessness

could not have been anticipated or prevented pre-deprivation, but a post-deprivation malicious-prosecution claim serves as an effective antidote." *Id.* Because Colorado state law provided a malicious prosecution tort, the Tenth Circuit held that "[t]he existence of the state remedy flattens the Fourteenth Amendment peg on which [plaintiff] now tries to hang his § 1983 malicious-prosecution claim." *Id.*

Denton alleges that Leamon and Lanham withheld exculpatory evidence to support the filing of criminal charges against him. [Doc. #1, p. 13 ¶ 85]. Taken as true, such lawlessness could not have been anticipated or prevented pre-deprivation. However, like Colorado, Oklahoma law provides an "effective antidote"—a malicious prosecution tort. *See Greenberg v. Wolfburg*, 890 P.2d 895 (Okla. 1994).[2] Because an adequate state remedy exists, Denton's Fourteenth Amendment malicious prosecution claim under § 1983 fails. Defendants' motion to dismiss Denton's § 1983 claim for malicious prosecution in violation of the Fourteenth Amendment is granted.

---

[2] Denton argues that he does not have an adequate remedy under state law based on the Oklahoma Supreme Court's decision in *Parker v. City of Midwest City*, 850 P.2d 1065 (Okla. 1993). The court is not persuaded. In that decision, the Oklahoma Supreme Court considered whether the Governmental Tort Claims Act precludes malicious prosecution liability for the state or a political subdivision. The court did not consider whether an individual employee of the state or political subdivision could be subject to malicious prosecution liability. Denton cites no further authority precluding a malicious prosecution claim against an individual, nor has the court identified any such authority. Rather, Oklahoma federal courts, including this court, have dismissed Fourteenth Amendment malicious prosecution claims against individuals because Oklahoma law provides an adequate remedy. *See Braden v. Davis*, No. 13-CV-693-GKF-FHM, 2015 WL 12915567 (N.D. Okla. Apr. 27, 2015), *aff'd,* 645 F. App'x 635 (10th Cir. 2016) (unpublished); *Gutierrez v. Gray*, No. 12-CV-263-JED-TLW, 2014 WL 4924446 (N.D. Okla. Sept. 30, 2014); *Payne v. Myers*, No. 14-CV-039-GKF-TLW, 2014 WL 11638568 (N.D. Okla. Sept. 26, 2014).

## B. Fourth Amendment

Denton also alleges that Leamon and Lanham are liable under 42 U.S.C. § 1983 for violating his Fourth Amendment right to be free from malicious prosecution. [Doc. #1, p. 2 ¶ 6]. The Tenth Circuit has recognized a cause of action under section 1983 for malicious prosecution in violation of the Fourth Amendment. *See Sanchez v. Hartley*, 810 F.3d 750, 755 (10th Cir. 2016) (collecting cases), *cert. denied*, 137 S. Ct. 1372 (2017).

Leamon and Lanham seek dismissal of Denton's Fourteenth Amendment section 1983 claim against them on the basis of qualified immunity.[3]

Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Accordingly, "[w]hen a defendant raises a qualified immunity defense, the court must dismiss the action unless the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court may address the two requirements in any order. *Id.*

The court will first consider whether Denton asserts a violation of a "clearly established" constitutional right. For a right to be "clearly established" and defeat qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). The

---

[3] Leamon and Lanham also seek dismissal on the basis that a malicious prosecution claim requires a demonstration of want of probable cause, and probable cause was conclusively established at Denton's preliminary hearing. [Doc. #10, p. 6]. Because this court concludes that Leamon and Lanham are entitled to qualified immunity, the court does not decide the probable cause argument.

United States Supreme Court has cautioned against defining a "clearly established" right "at a high level of generality." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011). Thus, although the Court does not require that "the very action in question has previously been held unlawful, . . . in the light of pre-existing law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640 (internal citations omitted). *See also al-Kidd*, 131 S. Ct. at 2083 ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.").

The United States Supreme Court's decision in *White v. Pauly*, — U.S. —, 137 S. Ct. 548, 552 (2017), is instructive. In considering whether a police officer was properly denied qualified immunity, the Court first stated:

> Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011). As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.*, at 639, 107 S. Ct. 3034.

*White v. Pauly*, — U.S. —, 137 S. Ct. 548, 552 (2017). Applying this principle, the Court concluded that the circuit court "misunderstood" the "clearly established" analysis and improperly relied on two cases—*Tennessee v. Garner*, 471 U.S. 1 (1985) and *Graham v. Connor*, 490 U.S. 386 (1989)—that articulated excessive-force principles at only a general level. *Id*. at 552. Although the Court did not prohibit a lower court from relying on general principles of law like those articulated in *Graham* and *Garner*, the *per curiam* opinion cautioned against reliance on general statements of law to create clearly established law except in "'an obvious case.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (*per curiam*)). *See also al-Kidd,* 131 S. Ct. at 2084 ("The general proposition, for example, that an unreasonable search or seizure violates

the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.").

Leamon and Lanham argue they are entitled to qualified immunity because the law in October 2015 (when the charges were filed and Denton surrendered for arrest) was not clearly established that omission of potentially exculpatory evidence from investigative reports or failing to provide the totality of the circumstances to a potential witness violates the Fourth Amendment. In opposition, Denton cites *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), characterizing the decision as holding that "officers who conceal and misrepresent material facts to the district attorney shall not be insulated from 1983 claims." [Doc. #12, p. 10].

Although the parties generally discuss the conduct of Leamon and Lanham collectively, because the Complaint includes specific allegations as to the conduct of Leamon and Lanham, respectively, the court will separately consider whether the Complaint plausibly alleges that Leamon and Lanham violated clearly established law so as to preclude qualified immunity.

1. <u>OSBI agent Chris Leamon</u>

Denton alleges that Leamon omitted potentially exculpatory statements by Nowata police officer Cheyenne Lee from a written report, titled "Interview of Cheyenne Lee." [Doc. #1, p. 11 ¶ 73]. The written report was allegedly submitted to the Nowata County District Attorney's Office before that office filed criminal charges against Denton. [*Id*.]. Denton alleges that Leamon intentionally omitted officer Lee's potentially exculpatory statements to give the false impression that Denton's conduct was unnecessary, reckless, dangerous and criminal. [*Id*., p. 12 ¶ 75].

Denton has not cited, nor has the court identified, any Tenth Circuit or Supreme Court case holding that omitting potentially exculpatory information from an investigative report violates clearly established law. Rather, Denton relies on the Tenth Circuit's decision in *Pierce v. Gilchrist*,

359 F.3d 1279 (10th Cir. 2004). Based on its review, the court concludes, for the two following reasons, that *Pierce v. Gilchrist* does not indicate that Leamon violated a "clearly established" constitutional right.

First, the *Pierce* court relied on two cases that articulated general statements of law—*Franks v. Delaware*, 438 U.S. 154 (1978), in which the United States Supreme Court held that knowingly including false information in an affidavit to support an arrest warrant was a violation of the Fourth Amendment, and *Stewart v. Donges,* 915 F.2d 572 (10th Cir. 1990), where the Tenth Circuit concluded that the same principles applied, and knowingly or recklessly *omitting* information, which if included would have vitiated probable cause, violated the Fourth Amendment. In considering whether the defendant would have understood falsifying forensic reports which "'became an inseparable basis' upon which the district attorney filed the[] charges," *Pierce*, 359 F.3d at 1282, to violate a clearly established law, the court reasoned:

> Ms. Gilchrist's alleged misconduct did not stem from a miscalculation of her constitutional duties, nor was it undertaken in furtherance of legitimate public purposes that went awry. Rather, as alleged, Ms. Gilchrist engaged in a deliberate attempt to ensure the prosecution and conviction of an innocent man. Such conduct, if it can be proven at trial, violated Mr. Pierce's constitutional rights with "*obvious clarity*."

*Pierce*, 359 F.3d at 1299-1300 (emphasis added).

Denton alleges that Leamon interviewed "several witnesses," and, in a written report of one of these interviews, Leamon omitted three potentially exculpatory statements by officer Lee. [Doc. #1, p. 11-12 ¶¶ 71-74]. This written report of the Lee interview subsequently was included in a larger report submitted to the Nowata County District Attorney's Office. [Doc. #1, p. 11 ¶ 73].

The court is not persuaded that Denton's allegations that Leamon omitted three statements from a sub-part of one report submitted, with other materials, to the District Attorney's Office

amount to such an "obvious" violation that reliance on general principles of law is appropriate. *See al-Kidd,* 563 U.S. at 742; *White*, — U.S. —, 137 S. Ct. at 552. A reasonable officer would understand that it is a Fourth Amendment violation to fabricate forensic reports that were an "inseparable basis" on which charges were filed as was alleged in *Pierce*. However, the connection between one written report of an interview that was included in a larger report eventually submitted to the District Attorney's Office and a finding of probable cause and decision to file charges is simply too tenuous to be "obvious." Accordingly, the court concludes that the allegations in the Complaint against Leamon do not allege such an "obvious case" to justify reliance on the general legal principles articulated in *Franks, Stewart*, and *Pierce*.

Second, the court concludes that *Pierce*, as well as the *Franks* and *Stewart* cases on which it relied, are factually distinguishable. The holdings in *Franks* and *Stewart* were both limited to knowing or reckless falsifications or omissions *in a probable cause affidavit. See Franks*, 438 U.S. at 155-56 ("[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."); *Stewart*, 915 F.2d at 582-83 ("[W]e hold that at the time defendant submitted his affidavit and arrested plaintiff, it was a clearly established violation of plaintiff's Fourth and Fourteenth Amendment rights to knowingly or recklessly omit from an arrest affidavit information which, if included, would have vitiated probable cause."). Denton does not allege that Leamon made a false statement or knowingly omitted potentially exculpatory evidence *in the probable*

*cause affidavit*—rather, his allegations are limited to the omission of exculpatory evidence from the written report entitled "Interview of Cheyenne Lee."

Nor does Denton allege misconduct that is qualitatively similar to that present in *Pierce*. *See Kennedy v. Peele*, 552 F. App'x 787, 793 (10th Cir. 2014). Although not included in the probable cause affidavit, the fabricated forensic reports in *Pierce* provided "'an inseparable basis' upon which the district attorney filed the[] charges." *Pierce*, 359 F.3d at 182. Denton does not allege facts suggesting that the "Interview of Cheyenne Lee" report was "an inseparable basis," or even a basis, upon which the Nowata County District Attorney filed charges against Denton. Rather, Denton alleges that the "Interview of Cheyenne Lee" report was only one part of a larger report provided to the Nowata County District Attorney's Office prior to criminal charges being filed. [Doc. #1, p. 11 ¶ 73]. Based on these allegations, the court will not infer that the "Interview of Cheyenne Lee" report was an "inseparable basis" for the charges against Denton filed by the Nowata County District Attorney's Office. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

In addition to *Pierce*, Denton cites seven cases: *Albright v. Oliver*, 510 U.S. 266 (1994); *Heck v. Humphrey*, 512 U.S. 477 (1994); *Wolford v. Lasater*, 78 F.3d 484 (10th Cir. 1996); *Romero v. Fay*, 45 F.3d 1472 (10th Cir. 1995); *Cottrell v. Kaysville City*, 994 F.2d 730 (10th Cir. 1993); *Anthony v. Baker*, 955 F.2d 1395 (10th Cir. 1992); and *Robinson v. Maruffi*, 895 F.2d 649 (10th Cir. 1990). Denton does not direct the court to any holding or principle of law upon which he relies in those cases to indicate that Leamon violated a "clearly established" constitutional right.

Based on the court's independent review of these cases, however, the court is not persuaded that any of them support the proposition that Leamon violated a clearly established constitutional

right. *See generally Albright*, 510 U.S. 266 (expressly not deciding whether a Fourth Amendment claim based on officer's testimony at probable cause hearing would succeed); *Heck*, 512 U.S. 477 (holding that § 1983 claim based on conviction or sentence that had not been invalidated was not cognizable); *Wolford*, 78 F.3d 484 (citing to *Franks* and *Stewart* for general principles of Fourth Amendment law); *Romero*, 45 F.3d 1472 (failure to investigate alibi witness did not vitiate probable cause and was not a constitutional violation); *Cottrell*, 994 F.2d 730 (claims for wrongful arrest and illegal strip search); *Anthony*, 955 F.2d 1395, *overruling recognized by Handy v. City of Sheridan*, 636 F. App'x 728 (10th Cir. 2016) (citing *Rehberg v. Paulk*, 566 U.S. 356 (2012)); *Robinson*, 895 F.2d 649 (discussion of applicable statute of limitations and general proposition that a prosecutor's decision to charge will not shield a police officer from liability). Nor has the court identified any factually analogous cases in support of Denton's position.

Based on its review, the court concludes that a reasonable official would not have understood Leamon's alleged omission of three potentially exculpatory statements from a subpart of an investigative report to violate clearly established law. Thus, the court concludes that Denton does not allege a violation of clearly established law, and Leamon is entitled to qualified immunity.

    2.    <u>OSBI agent Kevin Lanham</u>

Denton alleges that Lanham signed the probable cause affidavit filed by the State of Oklahoma against Denton. [Doc. #1, p. 12 ¶ 79]. Denton further alleges that Lanham interviewed CLEET instructor Shannon Butler in the process of which Lanham "withheld the totality of circumstances from Mr. Butler in order to secure from him an opinion unfavorable to the Plaintiff." [*Id.*, p. 12 ¶ 77]. Specifically, Denton alleges that Lanham did not show Butler the Denton or officer Andy Eubanks body camera videos, nor did Lanham inform Butler that Mathews had been

armed with a knife and driving into oncoming lanes of traffic at speeds exceeding ninety miles per hour. [*Id.*, p. 12 ¶¶ 76-77].

For the same reasons discussed above with regard to Leamon, the court is not persuaded *Pierce v. Gilchrist* establishes that Lanham violated a "clearly established" right. Although Denton alleges that Lanham signed the probable cause affidavit, Denton does not allege that the probable cause affidavit included any false statements. In fact, it is unclear from the allegations of the Complaint if the probable cause affidavit even included any information as to Butler's opinions.[4]

Further, the Complaint does not allege, nor can the court infer based on the factual allegations, that Butler's testimony was "an inseparable basis" on which Denton was charged. Rather, there is no indication in the Complaint that Lanham submitted any information to the Nowata District Attorney's Office regarding his interview with Butler or that Lanham relied on Butler's opinions in support of the probable cause affidavit. Thus, the court concludes that the

---

[4] The Complaint includes a single allegation that Lanham "prepared and submitted a report that knowingly contained false information for the purpose of securing an arrest and conviction of the Plaintiff." [Doc. #1, p. 13 ¶ 85]. However, the assertion relates to the investigative report, not probable cause affidavit. Further, all of the factual allegations against Leamon and Lanham relate to the OSBI agents' alleged omissions, not falsifications. [*Id.*, pp. 11-12 ¶¶ 70-79]. Thus, the court is not bound to accept Denton's single assertion that the investigative report included false statements. *See Twombly*, 550 U.S. at 555 ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Iqbal,* 556 U.S at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

allegations in Denton's Complaint against Lanham do not allege such an "obvious case" to justify reliance on the general legal principles articulated in *Pierce*.

Rather, the court concludes that the allegations against Lanham are more factually analogous to the unpublished decision of the Tenth Circuit in *Kennedy v. Peele*, 552 F. App'x 787 (10th Cir. 2014).

In *Kennedy*, FBI agent Ernest Peele was asked to conduct a comparative bullet-lead analysis of the bullets used in a double murder and bullets found in Timothy Kennedy's home. *Kennedy*, 552 Fed. App.'x at 789. Peele provided the investigating officer with a report indicating that the bullets were consistent with bullets coming from the same box, and the investigating officer recommended to the prosecutor that charges be filed against Kennedy. *Id.* Although Kennedy was convicted of the murders, Kennedy's convictions were subsequently overturned and Kennedy filed a claim against Peele for malicious prosecution alleging Peele knew that questions existed regarding the scientific reliability of the comparative bullet-lead analysis but failed to disclose any statistical doubts and presented the analysis results with more confidence than warranted. *Id.* at 791-92. The Tenth Circuit concluded that Peele was entitled to qualified immunity, reasoning:

> Kennedy does not allege that the CBLA conducted by Peele showed that the bullets from the crime scene and the bullets found in Kennedy's apartment had differing compositions. Rather, Kennedy faults Peele for failing to disclose any statistical doubts about the CBLA technique.
>
> This is a material and qualitative difference. Any reasonable officer would know that lying about the results of a forensic test is improper. *See Pierce,* 359 F.3d at 1300. But Kennedy does not direct us to any decisions holding that a forensic

analyst must inform law enforcement of the precise error rate or confidence interval of tests performed during the pre-arrest phase of an investigation.

*Id.* at 792-93.

Here, Denton does not allege that Lanham fabricated Butler's opinions, or that Lanham omitted material information regarding Butler's opinions from the probable cause affidavit. Rather, Denton alleges that Lanham failed to provide Butler the "totality of the circumstances" prior to Butler rendering an opinion. Although Denton attempts to cast the alleged omission as qualitatively the same, the court is not persuaded. There is a qualitative difference between a police officer omitting potentially exculpatory information provided to a witness, and a police officer omitting material information from a probable cause affidavit. The connection between the information provided by the officer to a third-party witness and charging documents is simply too tenuous for the court to find a violation of a clearly established right.[5]

The court is also persuaded by a recent decision of the United States District Court for the District of Colorado. There, the court held that allegations of an investigating officer omitting potentially exculpatory information that the identification of plaintiff resulted from an unduly

---

[5] The court also notes that the electronic docket for Nowata County case no. CF-2015-00126 against Denton indicates that both officer Cheyenne Lee and Shannon Butler were sworn and examined during the preliminary hearing, held on December 18, 2015, at which Judge Curtis L. DeLapp found that probable cause existed to charge Denton. [Doc. #10-1, p. 5]. Presumably, Denton's criminal defense counsel was afforded the opportunity to examine Lee and Butler, and to question them regarding any potentially exculpatory information, opinions, or statements.

suggestive photo array did not violate clearly established law. *See Talley v. City & County of Denver,* No. 16-CV-02327-RPM, 2017 WL 5130203 (D. Colo. Nov. 6, 2017).

In the same way, this court concludes that Denton's allegations that Lanham failed to provide Butler "the totality of the circumstances" prior to soliciting Butler's opinion do not state a claim for violation of a "clearly established" law. Thus, Lanham is entitled to qualified immunity.

Because the court finds that both Leamon and Lanham are entitled to qualified immunity, defendants' motion to dismiss with regard to Denton's claim for malicious prosecution in violation of the Fourth Amendment is granted.

## IV.    Conclusion

WHEREFORE, the Motion to Dismiss of defendants Kevin Lanham and Chris Leamon is granted.

DATED this 5th day of December, 2017.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT