**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

MIKE DENTON,                                    )
                                                )
            Plaintiff,                          )
                                                )
v.                                              )        Case No. 17-CV-280-GKF-FHM
                                                )
SCOTT CHAMBLESS, individually and              )
in his official capacity, and                   )
THE CITY OF OWASSO, Oklahoma,                  )
a municipal corporation,                        )
                                                )
            Defendants.                         )

## <u>OPINION AND ORDER</u>

This matter comes before the court on the Motion for Summary Judgment [Doc. 40] of defendants Scott Chambless and the City of Owasso. For the reasons discussed herein, the motion is granted.

## I.    **Background/Procedural History**

This is the second of two civil lawsuits brought against the City of Owasso by plaintiff Mike Denton pursuant to 42 U.S.C. § 1983, the federal civil rights statute. Denton began working for the City of Owasso as a police officer in 1994. In 2011, the Owasso Police Department investigated and ultimately terminated Denton for unreasonable and unnecessary force in relation to the arrest and booking of Bryan Spradlin. Denton grieved his termination, and the Department reinstated him following an arbitration award in 2012. Following his reinstatement, Denton sought interest on backpay awarded to him and obtained an interest award on June 11, 2015.

On October 28, 2013, Denton filed his first civil rights suit against the City of Owasso, as well as then-City of Owasso police chief Dan Yancy and then-City of Owasso manager Rodney Ray, alleging, among other things, that Denton's First Amendment protected union activities

constituted a substantial and motivating factor in the City's disciplining him related to the Spradlin Incident. *See* Doc. 2, *Denton v. Yancey*, No. 13-CV-709-TCK-TLW (N.D. Okla. Oct. 28, 2013). In the lawsuit, Denton asserted a section 1983 claim, in part, based on violations of his First Amendment right of assembly and First Amendment right of freedom of speech. The City of Owasso, with the individual defendants, moved for summary judgment as to all claims on June 1, 2015, which Judge Kern granted in October 2015.

On June 14, 2015, while on duty, Denton participated in the pursuit, and eventual arrest, of Cody Matthews. On October 2, 2015, the Nowata County District Attorney's Office charged Denton with one count of assault and battery with a deadly weapon and one count of reckless conduct with a firearm related to Denton's conduct during the June 14 arrest of Mathews. The City terminated Denton a second time on March 16, 2016. Denton again grieved his termination and the arbitrator found that Denton recklessly used a firearm in the interaction with Mathews, but reduced the discipline from termination to one (1) year suspension without pay. A Nowata County jury acquitted Denton of the criminal charges on March 8, 2017.

On May 7, 2017, Denton filed this lawsuit against the City of Owasso and Scott Chambless, police chief of the Owasso Police Department, asserting § 1983 civil rights claims. The Complaint asserts two causes of action against the City and Chambless: (1) § 1983 based on violations of Denton's First Amendment right to freedom of assembly, and (2) § 1983 malicious prosecution.[1]

On October 19, 2018, the City and Chambless filed their Motion for Summary Judgment seeking entry of judgment in their favor as to all of Denton's claims, as well as Denton's request

---

[1] The Complaint also asserted a § 1983 claim against Oklahoma State Bureau of Investigation agents Kevin Lanham and Chris Leamon. The court dismissed the claim against Lanham and Leamon in an Opinion and Order dated December 5, 2017. *See* [Doc. 19].

for punitive damages against the City. [Doc. 40]. In response, Denton withdrew his malicious prosecution claim and request for punitive damages against the City. [Doc. 45, pp. 26 and 28]. Accordingly, the court need only consider the § 1983 claim against the City and Chambless based on violations of the First Amendment right to freedom of assembly.[2]

## II.    Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A court must examine the factual record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). The inquiry for the court is "whether the evidence presents a

---

[2] Although the claim is framed as a right of assembly claim, in the motion for summary judgment briefing, the parties discuss it as a right of association claim. Both "the right of association and the right of assembly protect an individual's ability to join with others or engage in group effort for a common purpose," and at least one commentator has characterized the right of association as "'merely an assembly dispersed over time and space.'" *Van Deelen v. Johnson*, 535 F. Supp. 2d 1227, 1232-33 (D. Kan. 2008) (quoting C. Edwin Baker, *Scope of the First Amendment Freedom of Speech*, 25 UCLA L. Rev. 964, 1030-32 (1978)).

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

### III.   Undisputed Material Facts

The following facts are undisputed for summary judgment purposes:[3]

Denton began his employment as a City of Owasso police officer in February 1994. [Doc.
40, p. 9, ¶ 1; Doc. 45, p. 5, ¶ 1]. On June 30, 2011, Denton was involved in the arrest and booking
of Bryan Spradlin ("Spradlin Incident"). An Owasso police officer who also participated in
Spradlin's arrest and booking made a formal reporting to his immediate supervisor regarding
Denton's conduct during the Spradlin Incident. After an investigation and internal disciplinary
process, in November 2011, the City terminated Denton's employment for violating the Owasso
police department's excessive force policy. [Doc. 40, p. 9, ¶ 2; Doc. 45, p. 5, ¶ 1]. Denton and
the Owasso Fraternal Order of Police Lodge 149 ("FOP") filed a grievance claiming no just cause
existed for Denton's termination. An arbitration hearing was held in March 2012 and the arbitrator
denied the grievance in part, finding that the City established by a preponderance of the evidence
that Denton used unreasonable and unnecessary force in the Spradlin Incident, but reducing the
discipline imposed to a written reprimand. [Doc. 40, p. 9, ¶ 3; Doc. 45, p. 5, ¶ 1]. The arbitrator
ordered Denton's reinstatement with back pay and benefits, less any interim earnings. [*Id.*]. On
October 28, 2013, Denton filed a civil rights lawsuit against the City of Owasso; its former police

---

[3] The court takes the "Undisputed Material Facts" almost entirely from defendants' Statement of
Undisputed Material Facts, as Denton does not dispute thirty-three (33) of defendants' forty-five
(45) facts. *See* [Doc. 45, pp. 5-8]. Nor does he offer any evidence to refute testimony included in
eight (8) statements of undisputed facts. Local Civil Rule 56.1 requires a response brief in
opposition to a motion for summary judgment to "begin with a section which contains a concise
statement of material facts to which the party asserts genuine issues of fact exist" and "refer with
particularity to those portions of the record upon which the . . . party relies" to demonstrate a
genuine fact dispute. LCvR 56.1(c).

chief, Dan Yancey; and its former city manager, Rodney Ray (hereinafter, "*Denton I*"). [Doc. 40, p. 10, ¶ 4; Doc. 45, p. 5, ¶ 1]. The *Denton I* Complaint asserted, among other claims, a § 1983 claim based on violations of the First Amendment Right of Assembly, alleging that defendants retaliated against him for his public employee union activities. [Doc. 40, p. 10, ¶ 4; Doc. 45, p. 5, ¶ 1; Doc. 40-4]. The Complaint included allegations regarding the Spradlin Arbitration. [Doc. 40-4]. The deadline to amend lapsed on July 29, 2014. [Doc. 11, *Denton v. Yancey*, No. 13-CV-00709-TCK-TLW (N.D. Okla. July 1, 2014)].[4]

The City successfully appealed the arbitration award related to the Spradlin Incident in the District Court of Tulsa County, but the Oklahoma Court of Civil Appeals reversed the District Court's ruling. [Doc. 40, p. 10, ¶ 5; Doc. 45, p. 5, ¶ 1]. Denton returned to work as a police officer in October 2014. [*Id.*]. On October 6, 2014, Denton requested Owasso pay him, amongst other items, interest on his backpay award from the Spradlin Arbitration. [Doc. 40, p. 10, ¶ 6; Doc. 45, p. 5, ¶ 1]. On May 15, 2015, the City and Denton simultaneously submitted briefs in the Spradlin Arbitration regarding a post-award dispute over back pay interest. [Doc. 40, p. 10, ¶ 8; Doc. 45, p. 5, ¶ 2]. On June 11, 2015, the Spradlin arbitrator issued a supplemental award in favor of Denton and ordered interest on his back pay. [Doc. 40, p. 10, ¶ 9; Doc. 45, p. 6, ¶ 3].

On June 14, 2015, Denton participated in a high-speed chase, stop, and arrest of Cody Mathews in Nowata County ("Matthews Incident"). [Doc. 40, p. 10, ¶ 10; Doc. 45, p. 6, ¶ 3]. On June 15, 2015, the City suspended Denton with pay pending an investigation by the Owasso Police Department regarding his actions during the Mathews Incident. [Doc. 40, p. 11, ¶ 11; Doc. 45, p.

---

[4] The court takes judicial notice of matters that are public record in *Denton I*. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

6, ¶ 3].  On June 17, 2018, the District Attorney for Nowata and Washington Counties, Kevin Buchanan, requested the Oklahoma State Bureau of Investigation ("OSBI") to investigate allegations of official misconduct by Denton during the Mathews Incident.  [Doc. 40, p. 11, ¶ 12; Doc. 45, p. 6, ¶ 3].  Chambless also directed his assistant chief to contact OSBI regarding a potential investigation of the Mathews Incident, but it was discovered that Buchanan previously requested an OSBI investigation.  [Doc. 40, p. 11, ¶ 13; Doc. 45, p. 6, ¶ 3].  Chambless never communicated with Buchanan or anyone at the Nowata County District Attorney's Office requesting that it take action regarding the Mathews Incident or Denton.  [Doc. 40, p. 11, ¶ 14; Doc. 45, p. 6, ¶ 4; Doc. 40-9, p. 744:3-24].

OSBI agent Kevin Lanham led the OSBI investigation into the Mathews Incident with the assistance of OSBI agent Chris Leamon.  Neither agent knew of any attempt by or on behalf of Chambless to contact the OSBI regarding the Mathews Incident and understood the OSBI investigation to be at the request of Nowata County District Attorney Buchanan.  [Doc. 40, p. 11, ¶ 16; Doc. 45, p. 6, ¶ 5].  On June 18, 2015, Lanham and Leamon met with Chambless and the Owasso deputy chief of police at the Owasso Police Department as part of the OSBI investigation. [Doc. 40, p. 12, ¶ 17; Doc. 45, p. 6, ¶ 5].  The meeting was a routine meeting, performed in every case and intended to inform the employing law enforcement agency—i.e., the City of Owasso Police Department—that the OSBI was brought in to investigate an accusation against one of its officers and to gather reports, body camera videos, dash camera videos, police radio logs, and the identity of other involved officers  [Doc. 40, p. 12, ¶¶ 18-19; Doc. 45, p. 6, ¶ 5; Doc. 40-10, p. 18:13 to 19:5; Doc. 40-11, p. 9:11-17].

The Owasso Police Department conducted an internal investigation that included whether Denton violated the department's excessive force policy, as well as other potential violations of

Owasso Police Department regulations or policies by Denton during the Mathews Incident, including department policies about operation of an emergency vehicle. [Doc. 40, p. 11, ¶ 15; Doc. 45, p. 6, ¶ 5; Doc. 40-5, pp. 20:16 to 21:16]. Thus, the Owasso internal investigation involved more potential violations than the OSBI investigation into potential criminal charges. [Doc. 40, p. 13, ¶ 24; Doc. 45, p. 7, ¶ 7]. OSBI was aware of the Owasso Police Department internal investigation but considered it to be separate from its investigation and did not seek information regarding the internal process. [Doc. 40, p. 13, ¶ 22; Doc. 45, p. 7, ¶ 7]. Likewise, Chambless did not have access to the OSBI report and kept the Owasso internal process separate from the OSBI investigation. [Doc. 40, p. 13, ¶ 23; Doc. 45, p. 7, ¶ 7].

After OSBI completed its investigation, Lanham prepared a report and provided a copy to Buchanan because he requested the investigation. [Doc. 40, pp. 13-14, ¶ 26; Doc. 45, p. 7, ¶ 7]. Upon receipt of the report, Buchanan made the decision to bring criminal charges against Denton. [Doc. 40, p. 14, ¶ 30; Doc. 45, p. 7, ¶ 11]. On October 1, 2015, Lanham completed and executed the probable cause affidavit in support of criminal charges against Denton. [Doc. 40, p. 14, ¶ 31; Doc. 45, p. 7, ¶ 12; Doc. 40-13]. On October 2, 2015, the State of Oklahoma, acting by and through Buchanan, charged Denton with one count of assault and battery with a deadly weapon and one count of reckless conduct with a firearm related to Denton's conduct during the Mathews Incident. [Doc. 40, p. 15, ¶ 34; Doc. 45, p. 8, ¶ 15].

Meanwhile, in *Denton I*, the City and individual defendants moved for summary judgment on June 1, 2015 as to all claims. *See* [Doc. 40, *Denton v. Yancey*, No. 13-CV-00709-TCK-TLW (N.D. Okla. June 1, 2015)]. Denton responded in opposition on June 22, 2015, which included admission of the June 11, 2015 supplemental award as persuasive evidence of the City retaliating against Denton based on his union activities. [Doc. 40, p. 13, ¶ 25; Doc. 45, p. 7, ¶ 7]. The case

was set for trial on November 12, 2015. *See* [Doc. 63, *Denton v. Yancey*, No. 13-CV-00709-TCK-TLW (N.D. Okla. Sept. 1, 2015)]. On October 23, 2015, United States District Judge Terence Kern issued an Opinion and Order in *Denton I* granting summary judgment in favor of defendants as to all claims, including Denton's First Amendment – Right of Assembly claim. [Doc. 40, p. 15, ¶ 36; Doc. 45, p. 8, ¶ 15]. The Tenth Circuit Court of Appeals affirmed Judge Kern's opinion and judgment on October 3, 2016. [Doc. 40, p. 16, ¶ 42; Doc. 45, p. 8, ¶ 17].

On January 11, 2016, after completion of the City's internal investigation into alleged personnel policy violations, and after a January 6, 2016 pre-disciplinary meeting, Chambless recommended Denton be disciplined for ten (10) infractions or personnel policy violations. [Doc. 40, p. 15, ¶ 38; Doc. 45, p. 8, ¶ 15]. The prediscipinary action notice recommended termination for use of unreasonable, unnecessary, or excessive force in violation of Policy 1601, *Use of Force*, Policy OPS.01.01, *Use of Force & Weapons*, and 22 Okla. Stat. § 34.1, and reckless conduct while having in his possession a shotgun, which is inconsistent with training and/or violation of 21 Okla. Stat. § 1289.11. [Doc. 40-16]. A pre-disciplinary action hearing was held on March 14, 2016, and the hearing officer issued a finding concurring with the disciplinary recommendations, including termination for excessive force as well as reckless conduct with a shotgun. [Doc. 40, pp. 15-16, ¶ 39; Doc. 45, p. 8, ¶ 15; Doc. 40-17; Doc. 40-19]. Consistent with the pre-disciplinary action hearing report, the City terminated Denton's employment. [Doc. 40, p. 16, ¶ 41; Doc. 45, p. 8, ¶ 16].

Denton grieved his termination through the Union and, in December 2016, Denton and the City participated in a multi-day arbitration related to the Mathews Incident. [Doc. 40, p. 16, ¶ 43; Doc. 45, p. 8, ¶ 17]. A Nowata County jury acquitted Denton of the criminal charges in March 2017. [Doc. 40, p. 16, ¶ 44; Doc. 45, p. 8, ¶ 17]. After the acquittal, Denton and the City submitted

their final post-hearing briefing in the Mathews Incident arbitration. [*Id.*]. On April 17, 2017, the arbitrator issued a supplemental Decision and Award sustaining the City's findings and the discipline it imposed for six (6) of the policy violations and that Denton recklessly used a firearm in the Mathews Incident, but reducing the discipline from termination to a one (1) year suspension without pay. [*Id.*]. The arbitrator ruled in Denton's favor on the excessive force issue. [*Id.*]. Denton filed the instant lawsuit on May 17, 2017. [Doc. 1]. The Complaint asserts a § 1983 claim for violation of Denton's First Amendment Right of Assembly premised on allegations that defendants retaliated against Denton for his Spradlin Arbitration union activities. [Doc. 40, p. 17, ¶ 45; Doc. 1, p. 13, ¶ 81].[5]

## IV. Analysis

The City and Chambless seek summary judgment as to Denton's § 1983 First Amendment claim on two separate bases: (1) res judicata/claim preclusion[6], and (2) insufficiency of evidence

---

[5] Denton did not respond to defendants' statement of undisputed material fact no. 45. Because fact no. 45 is supported by the record, pursuant to Fed. R. Civ. P. 56(e)(2), the court considers the fact undisputed. *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."

[6] Defendants argue "[t]he doctrine of res judicata bars plaintiff's First Amendment claim." [Doc. 40, p. 18]. "Res judicata" refers to both claim preclusion and issue preclusion, and governs the preclusive effect of a judgment. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* (internal citations and quotations omitted). Defendants' motion for summary judgment argues only for application of claim preclusion and therefore the court need not consider issue preclusion. *See* [Doc. 40, pp. 18-22]. For the sake of clarity, the court will refer to claim preclusion rather than res judicata.

to support the claim. Additionally, Chambless asserts that he is entitled to qualified immunity. The court will first consider claim preclusion.

*A.      Claim Preclusion*

Defendants argues the *Denton I* judgment forecloses Denton's First Amendment claim in this matter pursuant to the doctrine of claim preclusion.

Under claim preclusion "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in the prior action." *Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards*, 314 F.3d 501, 503-04 (10th Cir. 2002) (emphasis in original) (quoting *Satsky v. Paramount Commc'ns, Inc*., 7 F.3d 1464, 1467 (10th Cir. 1993)). "The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc*., 847 F.3d 1221, 1239 (10th Cir. 2017) (quoting *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1275 (10th Cir. 2006)). "Under federal law, the application of claim preclusion requires that three elements be satisfied: '(1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits.'" *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1149 (10th Cir. 2006) (quoting *Yapp v. Excel Corp*., 186 F.3d 1222, 1226 (10th Cir. 1999)). Defendant bears the burden to establish the elements. *Nwosun v. Gen. Mills Rests., Inc*., 124 F.3d 1255, 1257 (10th Cir. 1997). The parties' summary judgment briefing includes argument directed only to the third element—identity of the cause of action in both suits. *Cf.* [Doc. 40, pp. 18-22; Doc. 45, pp. 11-15]. Thus, the court's analysis likewise focuses on the third inquiry.[7]

---

[7] Regarding the second element, the court notes that, in *Denton I*, Denton sued Dan Yancey, then-Owasso Police Chief, individually and in his official capacity. In this case, Denton sues Scott

To determine identity of causes of action in two separate lawsuits, the Tenth Circuit has adopted the transactional approach of the RESTATEMENT (SECOND) OF JUDGMENTS. *Wilkes*, 314 F.3d at 504. To that end, § 24 of the RESTATEMENT (SECOND) OF JUDGMENTS provides:

> (1)      When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
>
> (2)      What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

RESTATEMENT (SECOND) OF JUDGMENTS § 24 (Am Law Inst., 1982). The Tenth Circuit has recognized the practical difficulty of applying claim preclusion given the fact-specific nature of the inquiry. *See Haik v. Salt Lake City Corp.*, 567 F. App'x 621, 627 (10th Cir. 2014).[8] Accordingly, the court looks to the comments and illustrations to § 24—as well as Tenth Circuit case law—to determine the identity, if any, of the causes of action in *Denton I* and this case.

-------

Chambless, the current Owasso Police Chief, individually and his official capacity. To the extent sued in his individual capacity, the court questions whether Chambless can be considered a party to *Denton I*. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 36 (Am Law Inst., 1982). However, because the parties do not adequately brief the issue, the court does not consider the second element—identity of the parties—at this stage. *See* Fed. R. Civ. P. 7(b)(1)(B) ("A request for a court order must be made by motion. The motion must . . . state with particularity the grounds for seeking the order[.]"); Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.").

[8] "Unpublished decisions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1(A).

To determine what constitutes a "transaction," relevant factors include "whether the facts are so woven together as to constitute a single claim are their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b (Am Law Inst., 1982). No single factor is determinative. *Id.* However, "[t]he relevance of trial convenience makes it appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first." *Id.* At its base, underlying the inquiry, "is the need to strike a delicate balance between, on the one hand, the interests of the defendant and of the courts in bringing litigation to a close and, on the other, the interest of the plaintiff in the vindication of a just claim." *Id.*

The Tenth Circuit has repeatedly held "all claims arising from the same employment relationship constitute the same transaction or series of transactions for claim preclusion purposes." *Wilkes*, 314 F.3d at 504 (quoting *Mitchell v. City of Moore,* 218 F.3d 1190, 1202 (10th Cir. 2000)); *see also Johnson v. Dep't of Veterans Affairs*, 611 F. App'x 496, 498 (10th Cir. 2015) (unpublished) ("Multiple claims arising from the same employment relationship constitute the same event."). It is undisputed that, in *Denton I*, plaintiff asserted a § 1983 claim against the City, his employer, based on violations of the First Amendment Right of Assembly through retaliation for public employee union activities. [Doc. 40, p. 10, ¶ 4; Doc. 45, p. 5, ¶ 1; Doc. 40-4]. The Complaint included factual allegations regarding the Spradlin Arbitration. [*Id.*]. Denton also asserts a § 1983 claim against the City in this case premised on violation of the First Amendment Right of Assembly for retaliation for public employee union activities—this time, Denton's request for, and success in obtaining, interest on backpay awarded in the Spradlin Arbitration. [Doc. 40, p. 17, ¶ 45; Doc. 1, p. 13, ¶ 81]. Thus, the claims in *Denton I* and this case arise from Denton's employment with the City.

However, the mere fact that the claims arise from the same employment relationship does not end the transactional inquiry. Rather, the court must consider the relatedness of the claims in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b (Am Law Inst., 1982).

Regarding time, the Tenth Circuit previously "agree[d] with those courts holding the doctrine of claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed." *Mitchell,* 218 F.3d at 1202. That is, "[u]nder the transactional test, a claim should not be precluded merely because it is based on facts that arose prior to the entry of judgment in the previous action." *Hatch*, 471 F.3d at 1149. Rather,

> [t]he filing of the plaintiff's complaint frames the scope of litigation, establishing a transactional nexus into which facts and claims are fitted or excluded for purposes of claim preclusion. "New" claims, arising after the complaint has been filed, but before judgment, may be excluded from this transactional nexus, and thus be litigated in a subsequent action.

*Id.* at 1150. Denton filed the *Denton I* Complaint on October 28, 2013 asserting claims related to the Spradlin Incident and Arbitration. [Doc. 40, p. 10, ¶ 4; Doc. 45, p. 5, ¶ 1]. Thus, the court will consider the facts in existence at the time plaintiff filed *Denton I. See Johnson v. Bd. of Cnty. Comm'rs of Johnson Cnty*., No. 99-2289-JWL, 1999 WL 1423072, at *3 (D. Kan. Dec. 9, 1999).

It is undisputed that the *Denton I* Complaint includes allegations of conduct beginning in 2011. [Doc. 40, p. 10, ¶ 4; Doc. 45, p. 5, ¶ 1; Doc. 40-4]. However, it is also undisputed that Denton did not seek interest on his backpay award—the asserted protected union activity—until October 6, 2014, [Doc. 40, p. 10, ¶ 6; Doc. 45, p. 5, ¶ 1], and the parties did not brief the interest issue to the Spradlin arbitrator until May 15, 2015. [Doc. 40, p. 10, ¶ 8; Doc. 45, p. 5, ¶ 2]. The supplemental arbitration award providing interest on back pay did not issue until June 11, 2015. [Doc. 40, p. 10, ¶ 9; Doc. 45, p. 6, ¶ 3]. Further, and significantly, the alleged adverse employment

action in this case—the City's investigation and eventual discipline of Denton following the Mathews Incident—undisputedly did not begin until June 15, 2015 and Denton was not terminated until March 2016. [Doc. 40, pp. 11 and 16, ¶¶ 11 and 41; Doc. 45, pp. 6 and 8, ¶¶ 3 and 16]. Thus, the conduct that initially gave rise to *Denton I* litigation occurred almost four years prior to the earliest possible adverse employment action underlying this case, and the allegations underlying this case are temporally removed from those in *Denton I*.

More importantly, a pragmatic reading of the two complaints indicates that *Denton I* and this case arise from two distinct adverse employment actions: the first from the City's discipline of Denton because of the Spradlin Incident and the second from the City's discipline of Denton related to the Mathews Incident.[9] Thus, the origin of the claims is different. Additionally, the court is not persuaded a substantial overlap exists in the proofs and witnesses in *Denton I* and this matter. As previously stated, the claims originate from distinct conduct. Further, Dan Yancey was the City of Owasso Police Chief during the relevant time period to *Denton I*—and necessarily a witness regarding the City's conduct and employment decision—whereas Scott Chambless served as Owasso Police Chief at the time of the Mathews Incident and related employment decisions. Without a substantial overlap in witnesses and proofs, and in light of the nearly five-year period between the two terminations, the facts do not form a convenient unit for trial purposes.

In support of claim preclusion, defendants point out that Denton attached the supplemental arbitration award in the Spradlin Arbitration to his response to defendants' motion for summary judgment in *Denton I* and again referred to the supplemental award in his appellate brief. [Doc. 40, p. 21]. Thus, defendants argue that Denton could have amended his *Denton I* complaint to

---

[9] "An employee alleging retaliation must show that his employer took some adverse employment action against him." *Baca v. Sklar*, 398 F.3d 1210, 1220 (10th Cir. 2005).

include facts underlying the present lawsuit. However, it is clear that Denton cites the supplemental award in *Denton I* for its discussion of the City's release of video footage to the media after the Spradlin Arbitration—the alleged retaliatory action in *Denton I*. *See* [Doc. 40-12, pp. 25-26; Doc. 40-18, p. 15]. Denton did not seek to assert any additional claim based on the supplemental arbitration award in *Denton I*. [*Id.*] Moreover, defendants' argument ignores the procedural posture of *Denton I*. In mid-2015, when the investigation into Denton's conduct in the Mathews Incident began, the parties to *Denton I* were in the middle of summary judgment briefing and the case was set for trial on November 12, 2015. *See* [Doc. 63, *Denton v. Yancey*, No. 13-CV-00709-TCK-TLW (N.D. Okla. Sept. 1, 2015); Doc. 40, p. 13, ¶ 25; Doc. 45, p. 7, ¶ 7]. The deadline to amend lapsed on July 29, 2014. [Doc. 11, *Denton v. Yancey*, No. 13-CV-00709-TCK-TLW (N.D. Okla. July 1, 2014)]. Thus, it is unlikely Denton anticipated the need to seek leave to amend to include allegations related to the Mathews Incident in *Denton I* or could have reasonably believed that such leave would be granted.

Accordingly, the facts underlying this case cannot be said to be part of the same transaction as *Denton I*. Thus, the judgment in *Denton I* has no preclusive effect in this matter, and claim preclusion does not bar Denton's § 1983 First Amendment claim.

B. *Evidence Regarding § 1983 Claim*

Defendants next argue that Denton offers no evidence to support his § 1983 First Amendment cause of action and therefore summary judgment is appropriate.

Section 1983 permits a plaintiff to recover damages when a person acting under the color of state law deprives plaintiff of "any rights, privileges, or immunities secured by the Constitution[.]." 42 U.S.C. § 1983. Denton sues defendants for retaliation in violation of his First Amendment rights. In the Tenth Circuit,

Public employee claims for retaliation based on protected First Amendment activity are subject to a four-part test derived from *Pickering v. Board of Education*, 391 U.S. 563, 88 S. Ct. 1731, 20 L.Ed. 811 (1968), and *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). *See, e.g., Gardetto v. Mason*, 100 F.3d 803, 811 (10th Cir. 1996). The *Pickering/Connick* test requires the plaintiff to establish three factors: (1) his First Amendment activity involved a matter of public concern; (2) his interests in the protected activity outweighed the employer's interest in regulating it; and (3) the protected activity was a substantial motivating factor in the employer's decision to take adverse action against him. *Maestas v. Segura*, 416 F.3d 1182, 1187 (10th Cir. 2005). If the employee establishes these three factors, he wins unless (4) the employer establishes it would have taken the same action in the absence of the protected [activity]. *Id.*

*Cillo v. City of Greenwood Village*, 739 F.3d 451, 460-61 (10th Cir. 2013) (internal footnotes omitted).[10] Plaintiff need not satisfy the "public concern" or balance of interests elements in the

_____

[10] Defendants urge the court to apply the five-part *Garcetti/Pickering* test. *See* [Doc. 40, p. 22]. Pursuant to the *Garcetti/Pickering* test, in addition to the three elements of the *Pickering/Connick* analysis above, the court must consider "whether the speech was made pursuant to an employee's official duties." *Cypert v. Ind. Sch. Dist. No. I-050 of Osage Cnty.*, 661 F.3d 477, 483 (10th Cir. 2011). However, the court notes that at least one circuit has held that the official duty inquiry is inapplicable to pure associational claims—that is, a right of association claim under the First Amendment asserted without a related claim for free speech violations. *See Palardy v. Twp. of Millburn*, 906 F.3d 76, 83 (3d Cir. 2018) ("The touchstone of *Garcetti* is whether the public employee was 'mak[ing] statements pursuant to [his] official duties.' By the plain language of the Court's opinion, then, *Garcetti* applies to speech, not association.") (internal citation omitted).

Further, defendants' appear to argue that they would be entitled to summary judgment if plaintiff's protected activity was not part of his official duties. [Doc. 40, p. 17 ("Plaintiff's request and award for back pay interest in the Spradlin Arbitration were not part of Plaintiff's official duties as a police officer.")]. However, the First Amendment protects a public employee's speech *only if* made as a citizen, and not if the protected activity is part of plaintiff's official duties as defendants appear to argue. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007). "If the employee speaks pursuant to his official duties, then there is no constitutional protection[.]" *Id.* Assuming without deciding that the "official duty" inquiry applies to purely associational claims, the court is persuaded Denton acted as a citizen with regard to the protected activity and therefore the First Amendment applies. *See Brammer-Hoelter*, 492 F.3d at 1204-05 (speech regarding public employee salary and bonuses made as citizen); *Palardy*, 906 F.3d at 83-84 ("Moreover, it is hard to imagine a situation where a public employee's membership in a union would be one of his 'official duties.' This is especially true in light of *Janus v. American Federation of State, County, and Municipal Employees*, — U.S. —, 138 S. Ct. 2448, 2460, 201 L.Ed.2d 924 (2018), where the Supreme Court recently held that public employees who choose

context of an association claim brought involving public sector unions when a collective bargaining agreement is in place. *See Shrum v. City of Coweta*, 449 F.3d 1132, 1138-39 (10th Cir. 2006).[11]

Denton generally identifies his October 6, 2014 request for, and June 11, 2015 award of, interest on backpay in the supplemental arbitration award as his protected First Amendment activity. The City's discipline of Denton, including termination, following the Mathews Incident constitutes the adverse employment decision. Defendants argue Denton presents no evidence that Denton's alleged protected First Amendment activity was a substantial motivating factor behind the City's adverse employment action.

"To withstand summary judgment at step three, therefore, an employee must produce evidence linking the employer's action to the employee's speech." *Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005). "To meet this burden, the employee 'need not prove that his [protected activity] was the sole reason for [the] defendants' action,' but need only show the [protected activity] played a substantial part in the adverse employment action." *Deschenie v. Bd.*

---

not to join their union cannot be compelled to pay agency fees to offset the costs of the union's collective bargaining efforts.").

[11] The Tenth Circuit recently questioned whether the "public concern" element applies to retaliation claims involving union association, "particularly where there is not a collective bargaining agreement in place." *Cillo*, 738 F.3d at 461 n.17. Here, the record indicates a collective bargaining agreement exists between the City and Union. *See* [Doc. 40-7, p. 2]. Thus, the court is bound by *Shrum* and the "public concern" element is inapplicable. *Cf. Hollenbach v. Burbank*, No. 16-CV-00918-DBP, 2017 WL 2242861, at **4-5 (D. Utah May 22, 2017); *Cardona v. Burbank*, No. 12-CV-608-TS-BCW, 2018 WL 2723882, at **9-10 (D. Utah June 6, 2018), appeal filed no. 18-4102 (July 6, 2018) ("Further, *Shrum* must be considered on the facts presented in that case, which involved a union with a collective bargaining agreement. Reading *Shrum* and *Merrifield* together, the Court concludes that the public concern factor does apply to association claims involving public sector unions where . . . there is no agreement between the employer and the union.").

*of Educ. of Cent. Consol. Sch. Dist. No. 22*, 473 F.3d 1271, 1277 (10th Cir. 2007) (quoting *Copp v. Unified Sch. Dist. No. 501*, 882 F.2d 1547, 1553 (10th Cir. 1989)). However, "[s]peculation or hunches amidst rumor and innuendo will not suffice. Nor can a plaintiff sustain his burden at step three 'simply by showing that the elimination of the protected activity may have been welcomed by the defendants[.]'" *Maestas,* 416 F.3d at 1189 (internal citations omitted) (quoting *Wright v. Ill. Dep't of Children & Family Servs*., 40 F.3d 1492, 1500 (7th Cir. 1994)).

Denton relies on the temporal proximity between the supplemental arbitration award, issued on June 11, 2015, and his June 15, 2015 suspension without pay. [Doc. 40, pp. 10-11, ¶¶ 9 and 11; Doc. 45, p. 6, ¶ 3]. Although Denton points to the supplemental arbitration award, issued four days prior to his suspension, as protected activity, the Tenth Circuit and Supreme Court have rejected similar arguments in the context of Title VII and ADA discrimination claims. *See Xia v. Salazar*, 503 F. App'x 577, 579-80 (10th Cir. 2012) (unpublished); *Proctor v. United Parcel Serv*., 502 F.3d 1200, 1208-09 (10th Cir. 2007); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001). Both courts characterized arguments that an employee engaged in protected conduct until the agency issued the final decision as "utterly implausible" because the plaintiff took no part in the agency determination. *Proctor*, 502 F.3d at 1209; *Clark Cnty. Sch. Dist*., 532 U.S. at 273. Rather, the court must look to the employee's participation to determine the protected conduct. *See Proctor*, 502 F.3d at 1209. This inquiry is consistent with the First Amendment, which "prohibits retaliation against an employee who *files a grievance* with the union." *Morfin v. Albuquerque Pub. Schs.,* 906 F.2d 1434, 1438 (10th Cir. 1990) (emphasis added). Thus, the First Amendment inquiry necessarily focuses on plaintiff's participation in union activity, including the grievance procedure.

It is undisputed that Denton first requested that the City pay him interest on his backpay award from the Spradlin Arbitration on October 6, 2014. [Doc. 40, p. 10, ¶ 6; Doc. 45, p. 5, ¶ 1], and the parties simultaneously submitted briefs in the Spradlin Arbitration regarding the post-award dispute over back pay interest on May 15, 2015. [Doc. 40, p. 10, ¶ 8; Doc. 45, p. 5, ¶ 2]. Thus, the record indicates the time between Denton's protected activity and the adverse employment action is between—at the shortest—the approximately four-week period between the parties' simultaneous submission of briefing in the Spradlin Arbitration regarding interest and—at the longest—the eight months between Denton's initial request for interest on the backpay award and the supplemental award.

Pursuant to the *Pickering* test, "[a]n employer's knowledge of the protected [activity], together with *close* temporal proximity between the [protected activity] and challenged action, *may be* sufficiently probative of causation to withstand summary judgment." *Maestas,* 416 F.3d at 1189 (emphasis added). However, "mere temporal proximity of Plaintiff's protected [activity] to [the adverse action] is insufficient, without more, to establish retaliatory motive." *Baca*, 398 F.3d at 1221 (quoting *Butler v. City of Prairie Village*, 172 F.3d 736, 746 (10th Cir. 1999)). "[E]vidence such as a long delay between the [protected activity] and challenged conduct, or evidence of intervening events, tend to undermine any inference of retaliatory motive and weaken the causal link." *Maestas,* 416 F.3d at 1189 (internal citations omitted); *see also Aman v. Dillon Cos., Inc*., 645 F. App'x 719, 727 (10th Cir. 2016) (the Tenth Circuit "ha[s] repeatedly 'recognized that evidence of temporal proximity has minimal probative value in a retaliation case where intervening events between the employee's protected conduct and the challenged employment action provide a legitimate basis for the employer's action").

It is undisputed that Denton first requested the City pay him interest on his backpay award from the Spradlin Arbitration on October 6, 2014. [Doc. 40, p. 10, ¶ 6; Doc. 45, p. 5, ¶ 1]. Denton remained in his position for the next eight (8) months until the Mathews Incident. An eight-month delay undermines any inference of causation. *See Cypert*, 661 F.3d at 484 ("[A] time lapse exceeding three months is insufficient to establish causation by temporal proximity alone."). Moreover, no inference of causation may be drawn from the shorter period of approximately four (4) weeks between the parties' simultaneous submission of briefing on the backpay interest issue and the supplemental award. As previously stated, the City knew of Denton's request for interest on backpay for several months prior to the parties simultaneously submitting briefing to the arbitrator. Denton retained his employment with the City without discipline during the four-week period between the submission of the briefing and supplemental award. In fact, Denton presents no evidence of adverse action in the days immediately following the supplemental award. Rather, Denton points to no adverse action by the City until June 15, 2015—the day after the Mathews Incident. Evidence of the Mathews Incident—an intervening event—undermines any reasonable inference of causation, particularly when viewed in light of the City's prior knowledge of Denton's request for interest on the backpay award.[12] Thus, viewing the undisputed facts in Denton's favor, evidence of temporal proximity is insufficient to create a genuine dispute of fact as to causation and withstand summary judgment.

_____

[12] For this reason, cases indicating that a six-week period between protected activity and adverse action gives rise to an inference of causation are not persuasive to this court. *Cf. Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999). The intervening act of the Mathews Incident undermines any inference of causal connection. *See Maestas,* 416 F.3d at 1189; *Aman,* 645 F. App'x at 727 (recognizing evidence of temporal proximity has minimal probative value in a retaliation case where intervening events between the employee's protected conduct and the challenged employment action provide a legitimate basis for the employer's action").

Moreover, Denton offers no other evidence of causation. *Baca*, 398 F.3d at 1221 ("[M]ere temporal proximity of Plaintiff's protected [activity] to [the adverse action] is insufficient, without more, to establish retaliatory motive."). Denton points to his own testimony that Chambless was "very clear" about his displeasure regarding Denton's reinstatement and Chambless's feeling that "[he] was being forced by the courts to [reinstate Denton]." [Doc. 45, p. 16 (citing Doc. 40-5, pp. 29:8-19]. Denton argues "[i]f Chief Chambless was resentful that the 'courts' forced him to re-employ Denton, isn't it reasonable to infer that he might be more upset by an arbitrator's award that clearly chastises and financially penalizes the City for bad faith conduct towards the City?" [Doc. 45, p. 16]. However, Denton offers no *evidence* of actual displeasure on the part of Chambless due to the protected activity—Denton's pursuit of interest on the backpay award in arbitration. Mere speculation or hunches cannot survive summary judgment. *Maestas,* 416 F.3d at 1189. Further, that Chambless may have welcomed the elimination of protected activity does not satisfy plaintiff's burden. *Id.* at 1192.

Denton expends pages of his summary judgment response arguing that "the City was intent on building a case against Denton rather than conducting a fair and impartial internal investigation" and cites allegedly exculpatory evidentiary materials. [Doc. 45, p. 20]. However, Denton does not cite the evidentiary materials in his response to defendants' Statement of Undisputed Facts. Local Civil Rule 56.1 requires a response brief in opposition to a motion for summary judgment to "begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist" and "refer with particularity to those portions of the record upon which the . . . party relies" to demonstrate a genuine fact dispute. LCvR 56.1(c). Because Denton does not particularly refer to the allegedly exculpatory evidentiary materials in his response

to defendants' statement of undisputed material facts as required by LCvR 56.1, the court does not consider the material.

Moreover, even if the court were to consider the evidence, Denton's argument suffers from a fatal flaw—Denton offers no evidence that the City was intent on building a case against Denton *because of the protected activity*. Even if the City hoped to oust Denton, without evidence that the City was substantially motivated by Denton's protected union activity, there can be no liability under § 1983. *Maestas,* 416 F.3d at 1189 (internal citations and quotations omitted) (Plaintiff cannot sustain burden "simply by showing that the elimination of the protected activity may have been welcomed by the defendants[.]"). Thus, viewing the undisputed facts in Denton's favor, insufficient evidence exists that his protected activity was a substantial motivating factor in the defendants' suspension and eventual termination of Denton. Summary judgment is appropriate for this reason.

Defendants are entitled to summary judgment on an alternative ground as well. Assuming Denton established causation, the burden shifts to defendants to "show by a preponderance of the evidence [they] would have reached the same employment decision in the absence of the protected activity." *Trant v. Oklahoma*, 754 F.3d 1158, 1167 (10th Cir. 2014). Although generally a question of fact, summary judgment is appropriate when "any reasonable jury" would find that the employer would have taken the adverse action absent the protected activity. *Id.* at 1167-68.

The Tenth Circuit's decision in *Couch v. Board of Trustees of the Memorial Hospital of Carbon County* is instructive. 587 F.3d 1223, 1244-45 (10th Cir. 2009). In that case, plaintiff brought a § 1983 claim against his employer, a hospital, alleging that the hospital instituted a "campaign" of retaliation for his advocacy for drug and alcohol testing of other employee doctors in violation of his First Amendment rights. *Id.* at 1229. In addition to evidentiary deficiencies at

other stages, the court concluded defendants established that they would have taken the same actions absent the protected conduct, reasoning as follows:

> As already noted, the hospital's actions followed a familiar course of proceedings: independent outside review and then internal review, recommendations, and corrective action to address issues documented by the outside review. Here, the hospital responded appropriately to serious allegations concerning interpersonal employee conflicts, billing fraud, and inadequate patient care. The hospital's investigations were entirely appropriate; and the hospital's corrective actions were reasonable and based on the recommendations of those investigations. Therefore, the defendants have established the fifth *Garcetti* prong.

*Id.* at 1245.

Here, defendants offer undisputed evidence that the City suspended Denton with pay pending an investigation by the Owasso Police Department regarding his actions during the Mathews Incident. [Doc. 40, p. 11, ¶ 11; Doc. 45, p. 6, ¶ 3]. Additionally, Chambless directed his assistant chief to contact OSBI, but dropped the effort when it was discovered that the Nowata District Attorneys Office had previously requested the OSBI to investigate. [Doc. 40, p. 11, ¶ 12; Doc. 45, p. 6, ¶ 3]. Apart from the OSBI investigation, the Owasso Police Department conducted an internal investigation that included whether Denton violated the department's excessive force policy, as well as other potential violations of Owasso Police Department regulations or policies by Denton. [Doc. 40, p. 11, ¶ 15; Doc. 45, p. 6, ¶ 5]. After completion of the City's internal investigation into alleged personnel policy violations, and after a January 6, 2016 pre-disciplinary meeting, Chambless recommended Denton be disciplined, to include termination, for ten (10) infractions or personnel policy violations. [Doc. 40, p. 15, ¶ 38; Doc. 45, p. 8, ¶ 15]. A pre-disciplinary action hearing was held on March 14, 2016, and the hearing officer issued a finding concurring with the disciplinary recommendations. [Doc. 40, pp. 15-16, ¶ 39; Doc. 45, p. 8, ¶ 15]. Consistent with the pre-disciplinary action hearing report, the City terminated Denton's employment. [Doc. 40, p. 16, ¶ 41; Doc. 45, p. 8, ¶ 16]. Thus, the undisputed evidence

demonstrates that the City initially considered an independent review of Denton's conduct during the Mathews Incident from the OSBI, but then preceded to conduct an internal review upon learning of the existing OSBI investigation, articulate recommendations, and adopt the recommended discipline. Construed in the light most favorable to Denton, defendants' actions were reasonable.

In opposition, Denton points to arguments made against a finding of excessive force by the City in the civil rights lawsuit brought by Mathews against the City and Denton, *Mathews v. City of Owasso*, No. 16-CV-438-GKF-FHM and other exculpatory evidence regarding Denton's alleged use of excessive force. However, Denton does not cite the allegedly exculpatory evidentiary materials relied upon in his response to defendants' Statement of Undisputed Facts as required by LCvR 56.1 and the court does not consider it.

Further, even if the court were to consider the evidentiary material, under the circumstances, the evidence is not inconsistent with the City's decision to investigate and eventually discipline Denton. It is undisputed that the Owasso internal investigation included investigation of other potential violations of other City regulations and policies than the excessive force policy and therefore involved more potential violations than the OSBI investigation. [Doc. 40, pp. 11 and 13, ¶¶ 15 and 24; Doc. 45, pp. 6-7, ¶¶ 5 and 7; Doc. 40-16]. Further, the pre-disciplinary action hearing report, which was approved by the City, recommended termination for both unreasonable, unnecessary or excessive force and reckless conduct with a shotgun, which is inconsistent with his training. [Doc. 40, p. 15, ¶ 39; Doc. 45, p. 8, ¶ 15; Doc. 40-17; Doc. 40-19]. Additionally, although Denton points to the City's arguments against § 1983 liability in *Mathews v. City of Owasso*, the mere fact that an actionable § 1983 claim may not exist for Mathews based

on excessive force does not undercut the City's interest in disciplining its employee for misconduct, particularly in light of the prior Spradlin Incident.  *See Trant,* 754 F.3d at 1168.

Under the circumstances and based on the undisputed evidence presented, any reasonable jury would find that defendants would have suspended, investigated, and ultimately terminated Denton, even absent the protected union activity.   Thus, defendants have satisfied their burden and are entitled to summary judgment in their favor.[13]

## V.    Conclusion

WHEREFORE, the Motion for Summary Judgment [Doc. 40] of defendants Scott Chambless and the City of Owasso, Oklahoma is granted.

DATED this 28th day of December, 2018.

GREGORY K. FRIZZELL, CHIEF JUDGE

---

[13] Because no genuine dispute of fact exists as to whether a constitutional violation occurred, the court does not consider Chambless's assertion of qualified immunity.  *See Maestas*, 416 F.3d at 1184 n.2.